TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00726-CR







Kenneth Jackson, a/k/a Frank Dixon, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NO. 0961225, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING








 A jury found appellant Kenneth Jackson, who had been charged with the offense of
murder, guilty of the lesser included offense of manslaughter. See Tex. Penal Code Ann. § 19.04 (West
1994). Appellant's punishment was assessed by the jury at imprisonment for twenty years. In two points
of error, appellant asserts that the trial court erred in admitting evidence of unadjudicated extraneous
offenses at the punishment phase of trial and requests a new punishment hearing. We will overrule
appellant's points of error and affirm the trial court's judgment. At the punishment phase of trial


 evidence may be offered by the state and the defendant as to any matter the court deems
relevant to sentencing, including but not limited to the prior criminal record of the
defendant, his general reputation, his character, and opinion regarding his character, the
circumstances of the offense for which he is being tried, and, notwithstanding Rules 404
and 405, Texas Rules of Criminal Evidence, any other evidence of an extraneous crime or
bad act that is shown beyond a reasonable doubt by evidence to have been committed by
the defendant or for which he could be held criminally responsible, regardless of whether
he has previously been charged with or finally convicted of the crime or act. 



Tex. Code Crim. Proc. art. 37.07, § 3(a) (West Supp. 1998). Appellant's specific complaint is that: "The
trial court erred in admitting extraneous offense evidence of social security fraud at the punishment phase
of trial where the evidence was insufficient to demonstrate appellant committed the extraneous act."

 After appellant's arrest on the murder charge and while he was in jail, he was interrogated
by, and made a statement to, Nancy Grinell, a Special Agent of the Inspector General's Office of
Investigation, United States Social Security Administration. Special Agent Grinell advised appellant of his
Miranda rights, and appellant waived the presence of his attorney. In his own handwriting, appellant made
the statement which was read to the jury at the punishment phase of trial. The statement reads:


 My name is Kenneth Byron Jackson. My social security number is XXX-XX-XXXX. 
My date of birth is 6/19/49. My place of birth is Detroit, Michigan. I am currently in the
Travis County Jail. I have been here since 1/13/96. I have used the alias of Frank B.
Dixon, SSN XXX-XX-XXXX, DOB 3/26/43. I left Detroit in about 1980 and moved to
California sometime in 1984 or 1985. I bought false birth certificates -- a false birth
certificate off the street from someone I didn't know. I took this false birth certificate and
went to Social Security and filled out an application for a Social Security card. I also got
a California driver's license using this identity.


 I did it because I was an embarrassment to my family, then I got addicted to the
money. In California I was receiving AFDC benefits under Kenneth Jackson. My credit
was messed up under Kenneth Jackson so I used Frank Dixon to get credit. I also
worked under Frank Dixon so I could continue getting AFDC under Kenneth Jackson. 
Under Frank Dixon I worked commercial building maintenance doing maintenance. I also
worked in California selling telemarketing siding under either Frank Dixon or Kenneth
Jackson. I worked for Guardian Plans Insurance under Frank Dixon. I hurt my back at
this job. As a result, I received worker's compensation under this identity for one to one
and a half years. I received $15,000 to $18,000 settlement for worker's comp, which
does not include advances or medical benefits. I received through worker's comp --
medical benefits I received through worker's comp.


 After this I worked for Sears under Frank Dixon. I was still receiving AFDC
under Kenneth Jackson for one child. I also received food stamps in California under
Kenneth Jackson. I applied for SSI in Sacramento, but Social Security denied my claims. 
I don't remember how much I was getting from AFDC or food stamps. When my oldest
was 16 she went to live with her mother. I reported this to AFDC and this reduced my
benefits.


 Then when my youngest daughter graduated, I reported this to AFDC and
stopped receiving benefits. I left California in approximately 1992 or 1993 to move to
Detroit. I stayed there for about a week and moved to Davenport, Iowa. I started job
hunting and got a telemarketing doing tobacco surveys under Kenneth Jackson. I worked
three months and was laid off. I never got unemployment benefits. I worked for Midwest
Janitorial Services under Kenneth Jackson for nine months to one year.


 I was walking down the street in Davenport and saw a sign on a bus bench saying
we win 100 percent of SSI cases and call this number. I called the number saying I was
Frank Dixon. I went for an interview and said wait for second denial. Then I will take the
case. I don't remember the name of the guy that handled the case.


 Social Security denied my SSI and I appealed. My case went to hearing after four
to six months. I got a letter saying I was entitled to SSI benefits. I was still working under
Kenneth B. Jackson. I decided to move in November '94. I lived at 2101 Burton Drive,
apartment 1060. I move in May of 1995 to 2124 Burton Drive, apartment 259. When
I first came to Texas in November of '94, I worked for MCI for a couple of months under
Kenneth Jackson. Under Kenneth Jackson I worked for the Statesman for a couple of
months, Dillard's for a month, then worked for Wal-Mart since June of '95.


 On July 7, 1995, I reinjured myself at Wal-Mart. I applied for worker's comp
under Kenneth Jackson and had been receiving benefits -- and have been receiving
benefits. In Iowa I was receiving food stamps under either Kenneth Jackson or Frank
Dixon. In Texas I received food stamps under Frank Dixon. I knew it was wrong to do
it, but I was -- it was like every time I wanted to stop, there was another opportunity to
continue.


 I am very relieved it is over. I am just glad the kids were grown and they could
handle better what I have done. I was shown a copy of my application for SSI dated
4/12/93 and I did sign Frank B. Dixon. I made a false statement on application by saying
I didn't use any other name or Social Security number. I was shown a copy of my
application for SSI dated 10/19/94. I did make a false statement on this application by
indicating I did not use any other name or SSN. I agree to let Social Security intercept my
SSI check and to terminate SSI payments under Frank Dixon.


 I do understand I will owe Social Security for benefits I wrongly received under
Frank Dixon. No one else is responsible, not my kids nor common-law wife. This is the
end of my statement, and then there is a paragraph that is typed that says I have read this
handwritten statement consisting of this and six other pages. It is a true and correct -- it
is true and correct to the best of my knowledge and belief. I have initialed or signed each
page. All corrections or additions -- and was given an opportunity to make any
corrections or additions. Signed Kenneth B. Jackson.


 The judges of the Texas Court of Criminal Appeals have disagreed on whether a trial judge
before admitting evidence of extraneous crimes or bad acts must himself first find beyond a reasonable
doubt that appellant committed the extraneous offenses or bad acts. See Mitchell v. State, 931 S.W.2d
950, 955 (Tex. Crim. App. 1996) (Clinton, J. concurring). However, the judges agree that, if requested
to do so, the trial court should charge the jury that before considering evidence of extraneous crimes or bad
acts the jury must find beyond a reasonable doubt that the defendant committed the extraneous crimes or
bad acts. Id. at 954. See also George v. State, 890 S.W.2d 73, 76 (Tex. Crim. App. 1994); Harrell
v. State, 886 S.W.2d 154, 160 (Tex. Crim. App. 1994). The provision requiring that unadjudicated
extraneous offenses be shown beyond a reasonable doubt has been referred to as "easily the most
perplexing part of the 1993 amendment." 42 George E. Dix and Robert O. Dawson, Texas Practice: 
Criminal Practice and Procedure 631 (1995); see Caldron v. State, 950 S.W.2d 121, 133 (Tex.
App.--El Paso 1997, no pet. h.).

 Here, the trial court conducted a hearing out of the presence of the jury and concluded that
appellant's statement was admissible. The trial court properly charged the jury that before it could consider
evidence of extraneous offenses and bad acts it must first find beyond a reasonable doubt that appellant
committed the extraneous offenses or bad acts. The trial court also included in the jury charge a definition
of reasonable doubt. See Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991); Splawn v.
State, 949 S.W.2d 867, 872-74 (Tex. App.--Dallas 1997, no pet. h.); Avery v. State, 941 S.W.2d 221,
222-23 (Tex. App.--Corpus Christi 1996, no pet. h.). The trial court properly admitted and charged the
jury on its consideration of the extraneous offenses and bad acts evidence. However, appellant's argument
is also concerned with the sufficiency of the evidence to show he committed the extraneous offenses or bad
acts. Without citing authority, appellant argues that his extrajudicial statement alone is legally and factually
insufficient to prove beyond a reasonable doubt that he committed the extraneous offenses or bad acts
referred to in his extrajudicial statement.

 In reviewing the legal sufficiency of the evidence, the test is whether, after viewing the
evidence in this light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979); Staley v. State, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); Moreno v. State, 755 S.W.2d
866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and circumstantial
evidence. See Geesa, 820 S.W.2d at 162; Mack v. State, 859 S.W.2d 526, 527 (Tex. App.--Houston
[1st Dist.] 1993, no pet.). Proof of the corpus delicti--the body of the crime--may not be made by an
extrajudicial confession alone, but proof of the corpus delicti need not be made independent of the
extrajudicial statement. See Self v. State, 513 S.W.2d 832, 835 (Tex. Crim. App. 1974). "If there is
some evidence corroborating the confession, the confession may be used to aid in the establishment of the
corpus delicti. The corroborating evidence is sufficient if it permits a rational finding of guilt, beyond a
reasonable doubt, when joined with the extrajudicial admission" Folk v. State, 797 S.W.2d 141, 144
(Tex. App.--Austin 1990, pet. ref'd). When a confession is made, and the circumstances therein related
correspond in some points with those proven to exist, the evidence may be sufficient to support a jury's
verdict of guilt. See Wooldridge v. State, 653 S.W.2d 811, 816 (Tex. Crim App. 1983); Thomas v.
State, 299 S.W. 408, 410 (Tex. Crim. App. 1927); Kugadt v. State, 44 S.W. 989, 996 (Tex. Crim.
App. 1898); Hough v. State, 929 S.W.2d 484, 486-87 (Tex. App.--Texarkana 1996, pet. ref'd).

 In his extrajudicial statement, appellant said he created and used the false identity of Frank
B. Dixon. Using that false identity he made false statements to fraudulently obtain a number of social
security benefits. The record includes certified copies of the California Department of Motor Vehicles
records. These records show that: (1) an identification card was issued to Frank B. Dixon on April 10,
1986; (2) a driver's license was issued to Frank B. Dixon, on March 22, 1989 and renewed on April 6,
1993; and, (3) a driver's license was issued to Kenneth Byron Jackson on April 10, 1984, renewed on
March 18, 1988, and again renewed on June 20, 1991. On the face of each of these six cards was a
photograph and physical description. The trial judge and the jury could compare the pictures on each card
with the other cards and with the appellant as he sat in the courtroom during his trial. See Gollin v. State,
554 S.W.2d, 683, 686-87 (Tex. Crim. App. 1977); Spaulding v. State, 896 S.W.2d 587, 591 (Tex.
App.--Houston [1st Dist.] 1995 no pet.); Harper v. State, 696 S.W.2d 463, 464 (Tex. App.--Houston
[14th Dist.] 1985, no pet.).

 The photographs and physical descriptions on the identification card and the drivers license
are sufficient to corroborate appellant's extrajudicial statement. The extrajudicial statement and the
corroborative evidence taken together are legally sufficient to support the trial court's and the jury's finding
that appellant beyond a reasonable doubt committed the unadjudicated extraneous offenses and bad acts
that he referred to in his extrajudicial statement.

 We have not been cited any authority and we have found none requiring the application
of a factual sufficiency test to evidence of unadjudicated extraneous offenses and bad acts admitted at the
punishment phase of trial. The standard of review for factual sufficiency of evidence has been recently
restated by the Court of Criminal Appeals. "We emphasize that in performing a factual sufficiency review,
the courts of appeals are required to give deference to the jury verdict, examine all of the evidence
impartially, and set aside the jury verdict 'only if it is so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust'." Cain v. State, No. 1525-9, slip op. at 14-15, (Tex. Crim. App. Dec.
18, 1997) (quoting Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). See Stone v. State,
823 S.W.2d 375, 377-81 (Tex. App.--Austin 1992, pet. ref'd untimely filed). If a factual sufficiency test
is applicable, we hold that the requirements of Cain, Clewis, and Stone have been met.




 Appellants points of error are overruled. The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Jones and Dally*

Affirmed

Filed: January 23, 1998

Do Not Publish
























* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).

 



ent if it permits a rational finding of guilt, beyond a
reasonable doubt, when joined with the extrajudicial admission" Folk v. State, 797 S.W.2d 141, 144
(Tex. App.--Austin 1990, pet. ref'd). When a confession is made, and the circumstances therein related
correspond in some points with those proven to exist, the evidence may be sufficient to support a jury's
verdict of guilt. See Wooldridge v. State, 653 S.W.2d 811, 816 (Tex. Crim App. 1983); Thomas v.
State, 299 S.W. 408, 410 (Tex. Crim. App. 1927); Kugadt v. State, 44 S.W. 989, 996 (Tex. Crim.
App. 1898); Hough v. State, 929 S.W.2d 484, 486-87 (Tex. App.--Texarkana 1996, pet. ref'd).

 In his extrajudicial statement, appellant said he created and used the false identity of Frank
B. Dixon. Using that false identity he made false statements to fraudulently obtain a number of social
security benefits. The record includes certified copies of the California Department of Motor Vehicles
records. These records show that: (1) an identification card was issued to Frank B. Dixon on April 10,
1986; (2) a driver's license was issued to Frank B. Dixon, on March 22, 1989 and renewed on April 6,
1993; and, (3) a driver's license was issued to Kenneth Byron Jackson on April 10, 1984, renewed on
March 18, 1988, and again renewed on June 20, 1991. On the face of each of these six cards was a
photograph and physical description. The trial judge and the jury could compare the pictures on each card
with the other cards and with the appellant as he sat in the courtroom during his trial. See Gollin v. State,
554 S.W.2d, 683, 686-87 (Tex. Crim. App. 1977); Spaulding v. State, 896 S.W.2d 587, 591 (Tex.
App.--Houston [1st Dist.] 1995 no pet.); Harper v. State, 696 S.W.2d 463, 464 (Tex. App.--Houston
[14th Dist.] 1985, no pet.).

 The photographs and physical descriptions on the identification card and the drivers license
are sufficient to corroborate appellant's extrajudicial statement. The extrajudicial statement and the
corroborative evidence taken together are legally sufficient to support the trial court's and the jury's finding
that appellant beyond a reasonable doubt committed the unadjudicated extraneous offenses and bad acts
that he r